UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JAMES MAILLARO, et al.,** | : | Civil Action No.: 10-3474 (FLW) |
| Plaintiffs, | : | |
| v. | : | ORDER |
| **NEW YORK PRESBYTERIAN HOSPITAL, et al.,** | : | |
| Defendants. | : | |

This matter having come before the Court on the informal application of Plaintiffs James Maillaro ("Mr. Maillaro") and Joanne Maillaro (collectively, "Plaintiffs"), by letters to the Court dated September 1, September 15, and September 28, 2011, to compel the production of certain medical records related to a patient ("Patient 2") with whom Mr. Maillaro shared a hospital room on July 10, 2008; and Defendants New York Presbyterian Hospital ("NYPH") and Michael Kaiser (collectively, "Defendants"), by letters to the Court dated August 22 and September 28, 2011, having objected to production; and Defendants contending that Plaintiffs' request for production is "not...limited with respect to either time...or scope" and is therefore a "fishing expedition" based on Mr. Maillaro's assertion that he "believe[s] that [he] was exposed to an infectious process which was not prevented by...[NYPH] by placing [him] in a room with a patient who had medical conditions which caused...[his] surgical site to become infected" (Def.'s Letter dated August 22, 2011 at 1); and Defendants maintaining that because Mr. Maillaro's "medical records reflect that the organism ultimately identified through culture done July 25, 2008 was *Staphylococcus aureus* ("Staph")", the "only potentially relevant information in the other patient's records would be some indication that he suffered from a Staph infection as well" and "[t]hose portions of the records that might possibly reflect such information have already been summarized for Plaintiffs" (*Id*. at 2); and Defendants noting that "Staph bacteria is found everywhere" and "[i]mmuno-compromised individuals, such as

post-surgical patients, are more susceptible to infection" such that, even accepting Plaintiffs' argument "that the likelihood of acquiring a Staph infection might increase with the sharing of a room with a patient who was incontinent of urine and/or stool", this "does not warrant the disclosure of a non-party's entire medical record" because "Staph is an infection acquired by contact" (*Id.*); and Defendants arguing that "Plaintiffs have not directly or through counsel made any claim that would logically implicate a need to review the entire medical record for Mr. Maillaro's roommate" given that "Mr. Maillaro hired his own private duty nurse to care for him during...[the] time...when he shared a room with the patient in question" and given "increasingly protected privacy right[s]" (*Id.*); and Defendants, citing FED. R. EVID. 501, maintain that because Plaintiffs have "asserted claims of medical malpractice to which [New York] State substantive law applies", the "discoverability of the medical records" at issue should be "determined according to New York State law" (*Id.*); and Defendants, citing *Civil Practice Law and Rules* ("*CPLR*") § 4504, *Williams v. Roosevelt Hospital*, 66 N.Y.2d 391, 395 (1985), *Dillenbeck v. Hess*, 72 N.Y.2d 278, 283-85 (1989), and *In re Grand Jury Investigation, New York County*, 98 N.Y.2d 525, 529 (2002), argue that "New York's physician-patient privilege...is entirely a creation of statute" and "serves...[the] policy objectives...[of] maximiz[ing] unfettered patient communication with medical professionals...so that any potential embarrassment arising from public disclosure will not deter people from seeking medical help and treatment", "encourag[ing] medical professionals to be candid in recording confidential information in patient medical records...and thereby avert[ing] a choice between their legal duty to testify and their professional obligation to honor their patients' confidences", and "protect[ing] patients' reasonable privacy expectations against disclosure of sensitive personal information" (*Id.* at 3); and Defendants, citing *CPLR* § 4504(a), *People v. Sinski*, 88 N.Y.2d 487, 492 (1996), and *Dillenbeck*, 73 N.Y.2d at 284, contend that "unless the patient waives the privilege[,] a person authorized to

practice medicine shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity...and which was necessary to enable him to act in that capacity" and that this "privilege applies not only to information communicated orally by the patient, but also to information obtained from observations of the patient's appearance and symptoms...unless the facts observed would be obvious to laymen" (*Id*.); and Defendants, citing *In re Grand Jury*, 98 N.Y. 2d at 532, contend that "a hospital may assert the privilege to maintain the confidentiality of patient medical records because...patients should not fear that merely by obtaining emergency medical care they may lose the confidentiality of their medical records and their physicians' medical determinations" because to "interpret the rule differently would discourage critical emergency care, intrude on patients' confidential medical relationships and undermine patients' reasonable expectations of privacy" and, further, the same principle is "equally applicable to disclosure of any medical records" (*Id*. at 3-4); and Defendants, citing *Dillenbeck*, 73 N.Y.2d at 278, and *Herbst v. Bruhn*, 483 N.Y.2d 363 (2nd Dept. 1984), note that "[a]n individual will only have been deemed to waive the physician-patient privilege when, in bringing or defending a person[al] injury action, the patient has affirmatively placed his or her physical condition in issue" and "even if waiver is shown, it is incumbent upon the party seeking disclosure to demonstrate that the discovery sought will result in the disclosure of relevant evidence reasonably calculated to lead to the discovery of information bearing upon the prosecution of the matter" (*Id*. at 4); and Defendants, citing *New York City Health and Hospitals Corp. v. New York State Com'n of Correction*, 906 N.Y.S.2d 42 (2010), note that "[t]here is no general public interest exception to the privilege" such that here, where the "patient whose records are the subject of Plaintiffs' request for disclosure is not a party to this case", that patient "cannot be deemed to have waived the physician-patient privilege" and there "is no exception...contained in any statute that is applicable to the instant...records" (*Id*.); and Defendants,

citing 45 C.F.R. 160.103, *Coffie v. City of Chicago*, 2006 U.S. Dist. LEXIS 22061, at *14-15 (N.D. Ill. 2006), and *Bayne v. Provost*, 359 F. Supp. 2d 234, 236 (N.D.N.Y. 2005), maintain that "[t]he information sought by Plaintiffs also constitutes protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320a-1320d-8" (*Id*. at 4-5); and Defendants, citing *Northlake Medical Center, LLC v. Queen*, 280 Ga.App. 510, 511 (2006), *Arons v. Jutkowitz*, 825 N.Y.S.2d 738 (2006), *Gunn v. Sound Shore Medical Center*, 772 N.Y.S2d 714 (2004), *National Abortion Federation v. Ashcroft*, 2004 WL 292079, at *3 (N.D. Ill.), *Northwestern Memorial Hospital v. Ashcroft*, 262 F.3d 923, 926 (7th Cir. 2004), *Anderson v. City of New York*, 2006 WL 1134117 (S.D.N.Y.), and 45 C.F.R. 164.512(e), contend that "[t]he intent of HIPAA is to ensure the integrity and confidentiality of patients' medical information and to protect against unauthorized uses or disclosures of the information", that "HIPAA and its regulations...superseded any contrary provisions of state law which are less stringent than HIPAA", and that "HIPAA anticipates disclosures of protected health information pursuant to a court order" (*Id*.); and Defendants, citing 42 U.S.C. 1320d-7(a)(1), 45 C.F.R. 160.203(b), 45 C.F.R. 160.202, and *South Carolina Medical Association v. Thompson*, 327 F.2d 346, 349 (4th Cir. 2003), *cert. denied*, 540 U.S. 981 (2003), 45 C.F.R. 160.202, argue that "HIPAA's provisions...expressly preempt state law unless the state law relates to the privacy of individually identifiable health information and is more stringent than HIPAA's requirements" and that a state law is more stringent than HIPAA "if it provides greater privacy protection for the individual who is the subject of the individually identifiable health information" (*Id*.); and Defendants arguing that "New York's statutory physician-patient privilege is more stringent than the HIPAA provisions and is not, therefore, superseded or preempted by HIPAA" such that the application of "New York's physician-patient privilege to this matter mandates the denial of Plaintiffs' petition for an order compelling the production of the non-

party patient's medical records" (*Id*.); and in opposition, Plaintiffs contending that their request for the production of records is not "a fishing expedition" because they have "specific information regarding the roommate which confirms that the patient was indeed a potential source of infectious agents which may have caused or contributed to...[Mr. Maillaro's] condition" and which forms the "basis of the within lawsuit" (Pl.'s Opp'n Letter dated September 1, 2011 at 1-2); and Plaintiffs maintaining that they are "entitled to a full disclosure of all pertinent and relevant aspects of the patient's chart" in order to "establish that this particular patient was the source of [Mr. Maillaro's] infection" by providing the information "to an infectious disease expert for full review and analysis" as the information "goes to the very heart of Plaintiffs' claim against NYPH for negligence in exposing [Mr. Maillaro] to the potential source of the infection", the "information is not available from any other source", and an appropriate analysis "can only be accomplished through expert review" (*Id*. at 2); and Plaintiffs, citing 42 U.S.C. 1320d-7(a)(1), 45 C.F.R. 160.201 and noting Defendants' argument "that HIPAA preempts state law unless the state law relates to the privacy of the individual's identifiable health information and is more stringent than HIPAA's requirements" and that in this case "the New York statutory law governing physician-patient privilege is more stringent than HIPAA and...[therefore] is not preempted or superceded by it", maintain that "Defendants offer no...explanation for this bare conclusion" and that in fact the "HIPAA regulations [at issue] are far more extensive, detailed and restrictive than the New York State physician-patient privilege" and are "subject to the Court to construe and apply on a case-by-case basis" (*Id*.); and Plaintiffs, noting that Defendants cite *Northlake Medical Center, LLC v. Queen*, 280 Ga. App. 510, 511, *National Abortion Federation v. Ashcroft*, 2004 WL 292079, at *3, 45 C.F.R. 160.203, and 45 C.F.R. 164.512(e), maintain that "Defendants...admit that the intent of HIPAA is to ensure the integrity and confidentiality of patient records and that HIPAA supercedes any state provisions which

are less stringent" and "agree that 45 C.F.R. 164.512(e) provides that disclosure may be made under certain circumstances on order of a court or tribunal provided that disclosures are limited to the terms of such an order" (*Id.*); and Plaintiffs arguing that "a limited disclosure of relevant and pertinent information contained in the medical record of [Patient 2] is essential to [P]laintiffs' claim of negligence against NYPH for [Mr. Maillaro's] exposure to infectious agents" and "may be limited by the Court to protect the privacy rights and interests of [Patient 2] by redaction of all references to the patient name and...personal information, such as address, social security number and other potential identifying markers" (*Id.*); and Plaintiffs stating that they "will agree to[,] and the Court may limit disclosure to, only [Mr. Maillaro], his counsel and his medical experts" in order to "mitigate any potential exposure of protected health information to a third party" and in this way the "Court may provide Plaintiffs with the information required to prosecute [their] claim while properly protecting the privacy interests of [Patient 2] under State law as well as HIPAA" (*Id.* at 2-3); and Plaintiffs, citing FED. R. CIV. P. 26(b)(1), contend that good cause for the production of discovery "is shown [here] where the information sought is critical to the prosecution of Plaintiffs' claim against NYPH" and that the "Court may modify the disclosure so as not to unduly impact the privacy rights of [Patient 2]" (*Id.* at 3); and Plaintiffs requesting that the Court compel production of "the entire content of the chart of admission for [the subject patient,] with redactions as necessary to protect the identity of...[Patient 2,] [to be reviewed and available to Mr. Maillaro], his counsel and his expert witnesses" for the time period from June 26, 2008 through July 24, 2008 (*Id.*); and the Court noting that pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to

6

the discovery of admissible evidence" (*see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000)); and the Court noting that "[t]he party resisting discovery has the burden of clarifying and explaining its objections and to provide support therefor" (*Tele-Radio Systems, Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981); *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979)); and the Court noting that "[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law" (*Tomlinson v. Landers*, 2009 U.S. Dist. LEXIS 76178, at *6 (M.D. Fla. 2009); *see also Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)); and the Court noting that "under...[FED. R. EVID. 501], in federal question cases the federal common law of privileges applies...[and] where state law provides the rule of decision, ...state privilege law will govern" (*Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir. 1982)); and the Court noting that "applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable" and "one rule or the other must govern" such that "[w]hen there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule" (*Id.* at 104); and the Court noting that "[a]s a federal court sitting in diversity, ...[it] is obliged to apply the choice-of-law rules of the forum state" and that "New Jersey's choice-of-law principles dictate that a court use a flexible governmental-interest analysis which requires application of the law of the state with the greatest interest in resolving the particular issue" (*Capone v. Nadig*, 963 F. Supp. 409, 412 (D.N.J. 1997); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Gantes v. Kason Corp.*, 145 N.J. 478, 484 (N.J. 1996); *Veazey v. Doremus*, 103 N.J. 244 (N.J. 1986)); and the Court noting that the choice-of-law analysis "requires a court to assess whether there is an actual conflict between the relevant laws of the respective states" and, "[i]f the court determines that such an actual conflict does

exist, the second prong of the analysis seeks to determine the interest that each state has in resolving the specific issue in dispute" based upon the "qualitative, not the quantitative, nature of each state's interest" (*Id*. at 412-13; *see also Gantes*, 145 N.J. at 485; *Veazey*, 103 N.J. at 248); and the Court noting that pursuant to *N.J.S.A*. 2A:84A-22.2,

> a person, whether or not a party, has a privilege in a civil action...to refuse to disclose, and to prevent a witness from disclosing, a communication, if he claims the privilege and the judge finds that
> (a) the communication was a confidential communication between patient and physician, and
> (b) the patient or the physician reasonably believed the communication to be necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor, and
> (c) the witness
> > (i) is the holder of the privilege or
> > (ii) at the time of the communication was the physician or a person to whom disclosure was made because reasonably necessary for the transmission of the communication or for the accomplishment of the purpose for which it was transmitted or
> > (iii) is any other person who obtained knowledge or possession of the communication as the result of an intentional breach of the physician's duty of nondisclosure by the physician or his agent or servant and
>
> (d) the claimant is the holder of the privilege or a person authorized to claim the privilege for him.

and the Court noting that the physician-patient privilege "statute...reflects a legislative determination that the policy behind the patient-physician privilege is of greater weight than the evidence it makes unavailable" and "although the affected patients...who are the holders of the privilege...[may not be] parties to [a lawsuit] and not present to object, the defendant-physician has the right to assert the claim" (*Unick v. Kessler Memorial Hospital*, 107 N.J. Super. 121, 125 (N.J. Super. Ct. Law Div. 1969) because "[n]one of the statutory exemptions from and exceptions to the privilege evince any legislative intention to subordinate the benefits which inure to the relationship of patient-physician from the privilege to any countervailing benefit to society by subscription to the principle of liberal

pre-trial discovery to the degree that a physician would be required, without the consent of the patient, to disclose confidential information to a third-party plaintiff where the Legislature has not made a policy determination in the statute that the public interest of the patient's private interest demanded it" (*Osterman v. Ehrenworth*, 106 N.J. Super. 515, 521 (N.J. Super. Ct. Law Div. 1969)); and the Court noting that pursuant to *CPLR* § 4504, "[u]nless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity" and, "[a] patient who, for the purpose of obtaining insurance benefits, authorizes the disclosure of any such privileged communication to any person shall not be deemed to have waived the privilege created by this subdivision" where "[t]he relationship of a physician and patient shall exist between a medical corporation, as defined in article forty-four of the public health law, a professional corporation organized under article fifteen of the business corporation law to practice medicine, a university faculty practice corporation organized under section fourteen hundred twelve of the not-for-profit corporation law to practice medicine or dentistry, and the patient to whom they respectively render professional medical services"; and the Court noting that "[h]ospitals may assert a physician-patient privilege under *CPLR* § 4504(a) to maintain the confidentiality of patient medical records" (*In re New York County*, 779 N.E.2d 173, 174 (N.Y. 2002); *see also In re New York City Health and Hospitals Corp.*, 906 N.Y.S.2d 42, 44 (N.Y. App. Div. 2010)); and the Court noting that "CPLR 4504(a)...serves three core policy objectives" including the maximization of "unfettered communication with medical professionals...so that any potential embarrassment arising from public disclosure will not deter people from seeking medical help and securing adequate diagnosis and treatment", encouraging "medical professionals to be candid in recording confidential information

in patient medical records...and thereby avert[ing] a choice between their legal duty to testify and their professional obligation to honor their patients' confidences", and "protect[ing] patients' reasonable privacy expectations against disclosure of sensitive personal information" (*In re New York County*, 779 N.E.2d at 175); and the Court noting that although the physician-patient privilege "is not absolute", it "is to be given a broad and liberal construction to carry out its policy", New York courts "have narrowly construed statutes limiting the privilege and rejected claims that there is a general public interest exception to CPLR § 4504" (*People v. Sinski*, 669 N.E.2d 809, 811 (N.Y. 1996)), and "exceptions to the statutorily enacted physician-patient privilege are for the Legislature to declare" (*In re New York City Health and Hospitals Corp.*, 906 N.Y.S.2d at 44); and the Court noting that "[p]ursuant to CPLR § 4504(a), information obtained...by licensed medical personnel in attending to a patient in a professional capacity and which is necessary to enable him or her to act in that capacity is privileged", although "[a]s a general rule...disclosure of the name and address of a nonparty patient who may have been a witness to an alleged act of negligence or malpractice does not violate the patient's privilege of confidentiality of treatment...provided that the requesting party is not seeking to identify the patient by reference to the medical treatment he or she received...and revelation of the patient's location in the hospital does not reveal the patient's medical status" (*Rabinowitz v. St. John's Episcopal Hosp.*, 808 N.Y.S.2d 280 (N.Y. App. Div. 2005); *see also Hirsch v. Catholic Med. Ctr. of Brooklyn & Queens*, 458 N.Y.S.2d 625 (N.Y. App. Div. 1983); *In re New York County*, 779 N.E.2d 173, 177-76 (N.Y. 2002); *In re Seymour*, 732 N.Y.S.2d 764 (N.Y. App. Div. 2001); *Marte v. Brooklyn Hosp. Ctr.*, 779 N.Y.S.2d 82, 86-87 (N.Y. App. Div. 2004); *Gunn v. Sound Shore Med. Ctr. of Westchester*, 772 N.Y.S.2d 714, 715-16 (N.Y. App. Div. 2004); *Rogers v. NYU Hosps. Ctr.*, 795 N.Y.S.2d 438, 440 (N.Y. App. Div. 2005); *Jackson v. Jam. Hosp. Med. Ct.*, 876 N.Y.S.2d 246 (N.Y. App. Div. 2009)); and the Court noting that "a nonparty

waives...[the physician-patient] privilege to the same extent as a party" such that "the waiving party's privileged information is [thereafter] open to the consideration of the entire public" for "all purposes" (*Webdale v. N. Gen. Hosp.*, 796 N.Y.S.2d 861, 867-68 (N.Y. Sup. Ct. 2005)); and the Court noting that pursuant to 45 C.F.R. 164.512(e)(1), "...[a] covered entity may disclose protected health information in the course of any judicial or administrative proceeding: (i) [i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order"; and the Court noting that "protected health information means individually identifiable health information..." (45 C.F.R. 160.103) and "individually identifiable health information is information that is a subset of health information, including demographic information collected from an individual, and":

> (1) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
> (2) relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the part, present, or future payment for the provision of health care to an individual; and
>> (i) that identifies the individual; or
>> (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

(*Id.*); and the Court noting that pursuant to 45 C.F.R. 160.203, "[a] standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law...except if...(b) [t]he provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter"; and the Court noting that "the Secretary [of Health and Human Services ("HHS")] has repeatedly emphasized that...[HIPAA] defers to states that impose stringent consent requirements", that "individual authorization [is] generally...more protective of privacy interests than the lack of

11

such authorization", and that HIPAA "leaves pre-existing state law privacy rights in place" and does not "authorize or permit disclosures that state laws would otherwise prohibit" (*Citizens for Health v. Leavitt*, 428 F.3d 167, 181-82, n.16 (3d Cir. 2005); and the Court noting that HIPAA "give[s] preemptive effect to State laws that would otherwise be in effect...to the extent they conflict with and are more stringent than the requirements promulgated under...HIPAA", it is not "the intent of...[HIPAA] to give an effect to State law that it would not otherwise have in the absence of...[HIPAA's antipreemption provision]", "HHS [has] interpreted the antipreemption provision to merely maintain the status quo in states in which more stringent privacy regulations existed prior to HIPAA", and "*CPLR* § 4504(a) remains the law in areas in which New York State has the authority to regulate" (*National Abortion Federation v. Ashcroft*, 2004 WL 555701, at *1-5 (S.D.N.Y. 2004)); and the Court noting that its jurisdiction over this medical malpractice action is based upon diversity of citizenship between Plaintiffs and Defendants (*see* Pl.'s Compl., dkt. entry no. 1 at 1-24); and the Court noting that Plaintiffs allege that Defendants acted "in a negligent, reckless and/or careless manner" by, among other things, "failing to properly, carefully, and/or adequately treat...[Mr. Maillaro] for the conditions for which treatment was sought", "failing to prevent and treat an infection which developed while under [D]efendants' care", failing to properly and continuously monitor Mr. Maillaro's condition, "[f]ailing to promulgate, abide by and/or enforce applicable rules, guidelines and/or regulations under the circumstances", "acting without proper and due regard for the rights and safety of...[Mr. Maillaro]", and "[b]eing otherwise negligent, careless and/or reckless under the circumstances as may be found through the course of discovery or at the time of trial" (Pl.'s Compl., dkt. entry no. 1 at 1-24); and the Court noting that Mr. Maillaro has further alleged that he "was exposed to an infectious process which was not prevented by...[Defendants] by placing [him] in a room with a patient who had medical conditions which caused...[his] surgical site [to]

become infected" (Def.'s Letter dated August 22, 2011 at Ex. B, ¶ 7); and the Court noting that the parties agree that "there is no actual conflict between the law of the State of New York and the State of New Jersey" (Def.'s Letter dated September 28, 2011 at 3) because "New Jersey law and New York law are essentially the same" on the subject issue (Pl.'s Letter dated September 28, 2011 at 2) and, while Defendants maintain that "it is New York's law that should be applied" in the event that the Court determines a conflict exists (Def.'s Letter dated September 28, 2011 at 4), Plaintiffs contend that "New Jersey State law applies" although "application of either forum's law could apply as to the physician-patient privilege" (Pl.'s Letter dated September 28, 2011 at 3); and the Court noting that the parties agree that "New York law is more stringent than HIPAA" (*Id*. at 5; *see also* Def.'s Letter dated September 28, 2011 at 5-6); and the Court finding that New York state privilege law applies in this medical malpractice action as federal jurisdiction is based upon diversity of citizenship and, although venued in New Jersey, New York retains the greatest interest in resolving the subject issue given that the parties agree that "New Jersey and New York law are essentially the same" (Pl.'s Letter dated September 28, 2011 at 2), that both Mr. Maillaro's and Patient 2's treatment took place in New York, and that Patient 2's records are maintained in New York; and the Court finding that "*CPLR § 4504* remains the law in areas in which New York State has the authority to regulate" such that less stringent standards/requirements set forth in HIPAA do not preempt New York state law in this diversity-based medical malpractice action (*National Abortion Federation*, 2204 WL 555701, at *1-5; *see also Citizens for Health*, 428 F.3d at 181-82, n.16); and the Court finding that although Plaintiffs' request for Patient 2's medical records is relevant under Rule 26, pursuant to *CPLR § 4504* and attendant case law set forth above, absent Patient 2's consent to disclosure or Patient 2's waiver of the physician-patient privilege Defendants may not disclose the subject records to Plaintiffs; and the Court finding that Patient 2 has refused to provide consent for

13

the disclosure of his/her records (*see* Def.'s Letter dated September 30, 2011); and the Court finding that although the Affidavit ("Aff.") of Vivian N. Hammer ("Hammer") refers to "an unrelated matter involving a patient who fit the...description" of Patient 2, there is insufficient information in the record to determine whether Patient 2 has or has not waived the physician-patient privilege (*see* Def.'s Letter dated August 5, 2011, Aff. of Hammer; *see also Webdale v. N. Gen. Hosp.*, 796 N.Y.S.2d at 867-68); and the Court having reviewed the parties' written submissions; and the Court having considered the matter pursuant to FED. R. CIV. P. 78; and for the reasons stated above;

**IT IS** on this 12th day of October, 2011,

**ORDERED** that Plaintiffs' informal application to compel the production of certain medical records related to Patient 2 is **DENIED**; and it is further

**ORDERED** that the Court will hold a telephone status conference, to be initiated by Plaintiffs' counsel, on **October 17, 2011** at **10:30 a.m.**

> s/ *Douglas E. Arpert*
> **DOUGLAS E. ARPERT**
> **UNITED STATES MAGISTRATE JUDGE**